```
            IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF KANSAS


TONY W. WALKER,                       )
                                      )
              Plaintiff,              )
                                      )   CIVIL ACTION
v.                                    )
                                      )   No. 05-4094-JAR-JTR
                                      )
JO ANNE B. BARNHART,                  )
Commissioner of Social Security,      )
                                      )
              Defendant.              )
_____)
```

**REPORT AND RECOMMENDATION**

Plaintiff seeks review of a final decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits under sections 216(i) and 223 of the Social Security Act. 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). The matter has been referred to this court for a report and recommendation. The court recommends the Commissioner's decision be REVERSED and the case be REMANDED pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings in accordance with this opinion.

**I.   Background**

Plaintiff's application for disability insurance benefits was denied initially and upon reconsideration, and plaintiff requested a hearing before an Administrative Law Judge (ALJ). (R. 14, 50, 51, 62).  On Dec. 29, 2004, a hearing was held at which plaintiff was represented by counsel.  (R. 14, 353-87). At the hearing, testimony was taken from plaintiff, plaintiff's mother, and a vocational expert.  (R. 14, 353, 352).

The ALJ filed a decision on Feb. 16, 2005 in which he found plaintiff has the residual functional capacity (RFC) to perform his past relevant work as a gate tender and is, therefore, not disabled within the meaning of the Act.  (R. 14-31).  Plaintiff sought and was denied review by the Appeals Council, and consequently, the ALJ's decision is the final decision of the Commissioner.  (R. 6-8, 350-52); <u>Threet v. Barnhart</u>, 353 F.3d 1185, 1187 (10th Cir. 2003).  Plaintiff now seeks judicial review.

## II.  Legal Standard

The court's review is guided by the Act.  42 U.S.C. § 405(g).  Section 405(g) provides, "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court must determine whether the factual findings are supported by substantial

evidence in the record and whether the ALJ applied the correct legal standard.  White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but less than a preponderance, it is such evidence as a reasonable mind might accept to support a conclusion.  Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  The court may "neither reweigh the evidence nor substitute [it's] judgment for that of the agency."  White, 287 F.3d at 905 (quoting Casias v. Sec'y of Health & Human Serv., 933 F.2d 799, 800 (10th Cir. 1991)).  The determination of whether substantial evidence supports the Commissioner's decision, however, is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

   An individual is under a disability only if that individual can establish that he has a physical or mental impairment which prevents him from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months.  Barnhart v. Walton, 535 U.S. 212, 217-22 (2002); 42 U.S.C. § 423.  The claimant's impairments must be of such severity that he is not only unable to perform his past relevant work, but cannot,

considering his age, education, and work experience, engage in other substantial gainful work existing in the national economy.  42 U.S.C. § 423.

The Commissioner has established a five-step sequential process to evaluate whether a claimant is disabled.  20 C.F.R. § 404.1520 (2004); Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004); Ray, 865 F.2d at 224.  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has severe impairments, and whether the severity of his impairments meets or equals the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Id. at 750-51.  The Commissioner next assesses claimant's RFC.  20 C.F.R. § 416.920.  This assessment is used at both step four and step five of the evaluation process.  Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five--whether the claimant can perform his past relevant work, and whether he is able to perform other work in the national economy.  Williams, 844

F.2d at 751. In steps one through four the burden is on plaintiff to prove a disability preventing performance of past relevant work. Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show other jobs in the national economy within plaintiff's capacity. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims the ALJ's mental RFC assessment is unsupported by substantial evidence in the record in that the ALJ failed to properly evaluate the medical opinions regarding plaintiff's mental impairments, and failed to provide a narrative discussion explaining how inconsistencies and ambiguities in the medical opinions were resolved, and describing how the evidence supports the conclusions reached. (Pl. Br., 15-16, 21-23). Plaintiff does not contest the ALJ's physical RFC assessment. The Commissioner argues that the ALJ properly evaluated the medical opinions and adequately explained the mental RFC assessment. (Comm'r Br., 5-7). The court agrees with plaintiff that the ALJ did not properly evaluate the medical opinions, explain how the inconsistencies were resolved, and describe how the evidence supports the conclusions reached.

**III.    Analysis**

The regulations define "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [claimant's] impairment(s), including [claimant's] symptoms, diagnosis and prognosis, what [claimant] can still do despite impairment(s), and [claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). The record here contains medical opinions from a treating physician, Dr. Goering (R. 288-89), two consultative examining psychologists, Dr. Ohlde (R. 300-08) and Dr. McKenna (R. 244-50), and two state agency psychologists who reviewed the record during the initial and reconsideration reviews. (R. 274-87).

As the ALJ found, Dr. Goering, plaintiff's treating physician, is an internist and the record reveals he treated plaintiff only four times, once in Feb., 2003, and once each month in Dec. 2003, and Jan. and Feb. 2004. (R. 26) see also (R. 232-33) (2/12/03); (R. 230-31) (12/30/03); (R. 220-21) (1/13/04); (R. 318) (2/27/04). At plaintiff's second visit in Dec., 2003, Dr. Goering completed a "Medical Source Statement - Mental" in which he evaluated plaintiff in twenty mental abilities. (R. 287-88). The physician found plaintiff is "moderately limited" ("compatible with some, but not all, useful functioning) in nine abilities, and "markedly limited"

("resulting in limitations that seriously interfere with the ability to function normally") in four abilities.  Id.  The ALJ discounted Dr. Goering's opinion because Dr. Goering is not a mental health practitioner, his opinion was formed at plaintiff's second visit and after a ten-month gap between visits, the opinion is not based on objective testing or documented observations, the opinion is not supported by Dr. Goering's record or that of mental health sources, and the "assessment appeared entirely upon the claimant's report." (R. 27).  The ALJ did not give Dr. Goering's opinion either controlling or substantial weight.  Id.

As the Commissioner noted in her brief, plaintiff has made no specific arguments regarding the ALJ's evaluation of Dr. Goering's opinion.  Plaintiff summarized the ALJ's findings with regard to Dr. Goering's opinion and argued that the ALJ's RFC assessment is not supported by substantial evidence in the record, but plaintiff does not point to any evidence contrary to the reasons given by the ALJ for discounting Dr. Goering's opinion.

Moreover, the ALJ's reasons are supported by substantial evidence in the record.  Dr. Goering formed his opinion regarding plaintiff's mental restrictions on only his second visit with plaintiff, and that was ten months after the first

visit. (R. 232-33, 230-31, 288-89). Dr. Goering is a specialist in internal medicine, not a mental health specialist. (R. 293). The record contains no evidence of objective testing given or ordered by Dr. Goering regarding plaintiff's mental condition. And, neither Dr. Goering's treatment notes nor those of mental health sources reveal mental limitations as severe as those opined by Dr. Goering. The court finds no error in the ALJ's decision to discount the opinion of Dr. Goering.

The ALJ decided that the state agency psychologists' "opinion that the claimant does not have a severe mental disorder (exhibit 9F) [would not be] adopted as it is not consistent with the evidence showing mild to moderate limitations in mental functioning." (R. 28-29) (citing (R. 274-87)). Plaintiff did not specifically object to this finding, but noted that "the state agency doctors indicated that Plaintiff has up to moderate limitations in maintaining social functioning. (Pl. Br., 18) (citing (R. 284)). Plaintiff's comment is based upon the fact that the Psychiatric Review Technique Form (PRTF) completed by the state physicians has both the "Mild" and the "Moderate" blocks checked regarding the "Degree of Limitation" resulting from

plaintiff's "Difficulties in Maintaining Social Functioning." (R. 284).

The regulations provide that a mental impairment will be considered "not severe" only if, in applying the psychiatric review technique, the degree of limitation in the functional areas of "activities of daily living," "maintaining social functioning," and " maintaining concentration, persistence, or pace" are rated as "none" or "mild," and the number of repeated episodes of decompensation is "none."  20 C.F.R. § 404. 1520a(d)(1).  Thus, the fact that both "Mild" and "Moderate" degrees of difficulty are checked with regard to "maintaining social functioning," creates an ambiguity whether the consultants determined plaintiff's mental impairments are not severe.  The "Consultant's Notes," however, clarify the ambiguity:  "[Claimant's] social functioning appears to be mildly impaired.  He reported to Dr. McKenna that he wants to withdraw but has no difficulty getting along with others unless he has been drinking.  His family reports that he gets upset easily but his employer reported he had no difficulty interacting with others on the job. . . . The claimant's impairments are considered non-severe."  (R. 286).  Further, in the "Medical Summary" of the PRTF, the block has been checked indicating "Impairment(s) Not Severe."  (R. 274).

Thus, the substantial evidence in the record supports the ALJ's understanding that the state agency consultants found plaintiff's mental impairments not severe. Moreover, his determination to reject the opinion because it is inconsistent with record evidence is also supported by substantial evidence in the record.

Plaintiff's arguments primarily concern alleged errors in evaluating the medical opinions of the psychologists who performed consultative examinations of plaintiff, Drs. McKenna and Ohlde. (Pl. Br., 21-22). The ALJ summarized Dr. McKenna's opinion that plaintiff: has average intellectual functioning; has the ability to understand and follow simple and complex written and oral instructions; has no difficulties in activities of daily living; has limited ability to adjust and be adept at various work and social situations; has adequate attention, concentration and persistence; and has "coherent thinking, adequate social comprehension, and judgment, appropriate emotional state, and adequate math skills." (R. 28). He found that Dr. McKenna assigned a GAF[1]

---

[1] A GAF score represents "the clinician's judgment of the individual's overall level of functioning." Am. Psychiatric Ass'n, <u>Diagnostic and Statistical Manual of Mental Disorders</u> (DSM-IV) 30 (4th ed. 1994). The GAF Scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear

score of "60" indicating moderate, but almost mild, limitations. Id. The ALJ gave Dr. McKenna's opinion substantial weight because: (1) The opinion is well-supported by medically acceptable diagnostic techniques. (2) It is well-supported by Dr. McKenna's trained observation. (3) It is well-reasoned. (4) It is consistent with other mental health source findings. (5) It is consistent with plaintiff's earlier job performance. And, (6) it is consistent with plaintiff's daily activities. (R. 28).

The ALJ summarized the findings of Dr. Ohlde's mental status evaluation, that plaintiff: can respond to and understand questions and instructions; can carry out simple instructions; can persist in assessment tasks; can exhibit adequate concentration, memory, attention, and social skills; was able to adapt to the interview; and would have no more than mild to moderate difficulty sustaining concentration and attention in other settings. (R. 28)(citing Ex. 19F/141 (R. 303)).[2] The ALJ also summarized Dr. Ohlde's "assessment."

---

expectation of death). Id. at 32. GAF is an objective classification system providing evidence of a degree of mental impairment. Birnell v. Apfel, 45 F. Supp. 2d 826, 835-36 (D. Kan. 1999) (citing Schmidt v. Callahan, 995 F. Supp. 869, 886, n.13 (N.D. Ill. 1998)).

[2]The findings attributed to Dr. Ohlde at this point in the decision and referred to elsewhere in the decision as Dr. Ohlde's "objective findings" are the opinions contained in the

-11-

Id. (citing Ex. 19F/139-40 (R. 304-05)).  He noted that Dr. Ohlde assessed plaintiff with:  fair to poor ability to deal with work stresses; and fair to adequate ability to perform most work tasks.  Id.

The ALJ explained the weight given Dr. Ohlde's opinions:

> Dr. Ohlde is not a treating source and his opinion
> is not entitled to controlling weight.  He admitted
> that his assessment[3] was based upon MMPI patterns and
> tendencies rather than his objective findings.  The
> undersigned has adopted Dr. Ohlde's objective
> findings, but finds that MMPI results, while useful
> as an indication of the validity of the claimant's
> reports, are not a sufficient basis for a residual
> functional capacity.  The residual functional
> capacity is based upon the claimant's actual
> demonstrated ability to perform mental work
> functions as well as his previous work performance,
> his daily activities, and the objective findings of
> Dr. McKenna and Dr. Ohlde, which were in essential
> agreement.  Dr. Ohlde's objective findings have been
> incorporated into the residual functional capacity,
> but his assessment has not been given substantial
> weight because it is not consistent with these
> findings.

(R. 28).

This discussion reveals that the ALJ made a distinction between Dr. Ohlde's "Medical Assessment," which the ALJ found

---

"Summary Statement" paragraph of Dr. Ohlde's Mental Status Exam report.  (R. 303).

[3] The "assessment" which the ALJ summarized earlier and which he now finds to be based upon MMPI patterns and tendencies is the "Medical Assessment of Ability to Do Work-Related Activities (Mental)" (hereinafter "Medical Assessment") signed by Dr. Ohlde and in the record at (R. 304-06) (cited by the ALJ as "exhibit 19F/139-140").

to be based upon MMPI patterns and tendencies, and Dr. Ohlde's "objective findings" contained in the Mental Status Exam narrative summary.  Plaintiff claims the ALJ erred in three respects in assessing RFC based upon the relative weight of the opinions of the two consultative examiners.

First, plaintiff claims it is impossible to ascertain from the decision what the ALJ means by "objective findings" how he resolved the ambiguities presented, and which of the "objective findings" he included in his RFC assessment and which of the "objective findings" he rejected.  (Pl. Br., 21).  Next, plaintiff claims the ALJ erred in finding plaintiff capable of low stress jobs based upon Dr. Ohlde's opinion that plaintiff is limited to jobs with no stress.  (Pl. Br., 22).  Finally, plaintiff claims the ALJ erred in finding that Dr. Ohlde admitted that his "Medical Assessment" was based on MMPI patterns and tendencies rather than Dr. Ohlde's objective findings.  <u>Id.</u>

The court agrees with plaintiff that the decision is confusing in its use of the term "objective findings." Because the ALJ did not define his term or apply the term as defined by the regulations and case law, the court cannot adequately review the decision to determine whether it is supported by substantial evidence in the record as a whole.

Therefore, remand is necessary for the Commissioner to properly assess the medical opinions and plaintiff's RFC in accordance with the regulations and case law, and explain how the ambiguities were resolved and how the evidence supports the RFC findings.

The regulations define "objective medical evidence:" "medical signs and laboratory findings as defined in § 404.1528 (b) and (c)." 20 C.F.R. § 404.1512(b)(1). 20 C.F.R. § 404.1528 defines signs and laboratory findings:

> (b) *Signs* are anatomical, physiological, or psychological abnormalities which can be observed, apart from your statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception. They must also be shown by observable facts that can be medically described and evaluated.
>
> (c) *Laboratory findings* are anatomical, physiological, or psychological phenomena which can be shown by the use of medically acceptable laboratory diagnostic techniques. Some of these diagnostic techniques include . . . psychological tests.

20 C.F.R. § 404.1528(b) & (c). In explaining how the Commissioner will evaluate symptoms, the regulations explain that "Objective medical evidence is evidence obtained from the

-14-

application of medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1529(c)(2).

Summarizing, "objective medical evidence" consists of "signs" which can be observed through the application of medically acceptable clinical diagnostic techniques, and "laboratory findings" which can be shown by the use of medically acceptable laboratory diagnostic techniques. Specifically, "objective medical evidence" of psychological abnormalities, includes "observable facts that can be medically described and evaluated," and "psychological tests."

The Tenth Circuit has had an opportunity to consider the scope of "objective medical evidence." Luna v. Bowen, 834 F.2d 161, 162 (10th Cir. 1987). In so doing, the court held that such evidence is "any evidence that an examining doctor can discover and substantiate. Both physiological and psychological medical evidence is objective, because each is amenable to external testing." Id. In a footnote, the court explained the difference between subjective evidence and objective medical evidence. It explained that subjective evidence "consists of statements by a claimant or other witnesses on his behalf," which must be evaluated solely on the basis of credibility, whereas "objective medical evidence" is "based on information which an impartial medical expert can

evaluate either from examining the claimant himself or from evaluating the claimant's test results or examination reports." Id. 834 F.2d at 162, n.2.

In accordance with the regulations and the holding of Luna, the report of Dr. McKenna's mental status examination is objective medical evidence of plaintiff's mental condition because it is based upon signs shown by medically acceptable clinical diagnostic techniques. Dr. McKenna examined plaintiff using the clinical diagnostic techniques of psychological evaluation and produced a report based upon his observations. In identical fashion, the report of Dr. Ohlde's mental status exam is objective medical evidence of plaintiff's mental condition because it is based upon signs shown by medically acceptable clinical diagnostic techniques. Dr. Ohlde used the same clinical diagnostic techniques as Dr. McKenna in examining plaintiff and in producing a report based upon his observations. It is this report to which the ALJ refers as Dr. Ohlde's "objective findings." (R. 28).

Dr. Ohlde's "medical assessment," on the other hand, is a "medical opinion" which is not "objective medical evidence" but is "other evidence from medical sources." Compare 20 C.F.R. § 404.1512(b)(1); with 20 C.F.R. § 404.1512(b)(2). However, as plaintiff points out in his brief, the MMPI upon

which the ALJ found that Dr. Ohlde based his "medical assessment," is a psychological test and is by definition a "laboratory finding" which is "objective medical evidence." 20 C.F.R. §§ 404.1528(c), 404.1512(b)(1). Thus, the MMPI results are objective findings. Dr. Ohlde included the MMPI scores in his report. (R. 302).

When the ALJ adopted Dr. Ohlde's "objective findings," but rejected the MMPI results and the "medical assessment" which he found to be based on the MMPI results, he created an ambiguity which he did not resolve and which the court is unable to resolve without post hoc rationalization of the ALJ's opinion. The court is unable to determine what evidence the ALJ considered "objective findings;" what the ALJ considered inadequate about the MMPI results[4]; which findings of Dr. Ohlde were accepted, which were rejected, and why; and how the ALJ assigned relative weights to Dr. McKenna's opinion and to that of Dr. Ohlde. The court may not re-weigh the evidence; White, 287 F.3d at 905; and may not "create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the

---

[4]The ALJ cited no medical authority or other basis for his finding that MMPI results are a useful indication of the validity of plaintiff's reports but are not a sufficient basis for RFC assessment.

Commissioner's decision itself." Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005) (citing Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004); and SEC v. Chenery Corp., 318 U.S. 80, 87 (1943)); see also, Knipe v. Heckler, 755 F.2d 141, 149 n.16 (10th Cir. 1985).

The ambiguity is worsened by the ALJ's statement that Dr. Ohlde "admitted" that his "medical assessment" was based upon MMPI patterns and tendencies rather than upon his objective findings. (R. 28). Plaintiff argued "Dr. Ohlde indicates suggestive results from the MMPI-2 testing, but that is a far cry from stating his entire opinion was based only on the MMPI-2 testing." (Pl. Br., 22). The court agrees with plaintiff.

In the narrative explanations on his "medical assessment," Dr. Ohlde stated, "The MMPI-2 and Mental Status Exam indicate" (R. 304), "Results of the Mental Status Exam indicated," "as suggested by MMPI-2 results," and "The MMPI-2 results suggest." (R. 305). Thus, it is clear Dr. Ohlde based his "medical assessment" on evidence obtained from both the Mental Status Exam and the MMPI-2 testing. Moreover, the court is at a loss to determine the basis for the ALJ's statement that Dr. Ohlde "admitted that his assessment was based upon MMPI patterns and tendencies rather than his

objective findings." (R. 28). The court was unable to find such a statement in either Dr. Ohlde's Mental Status Exam report or in the "medical assessment." (R. 300-08). The term "pattern" does not appear anywhere in the doctor's report or in his "medical assessment." Dr. Ohlde stated, "The MMPI-2 and Mental Status Exam indicate [claimant's] tendency to be immature passive, distrustful, and anxious coupled with a need/desire for support and attention. . ." (R. 304). This statement reveals the doctor's opinion that <u>together</u> the MMPI-2 and the Mental Status Exam revealed certain tendencies in plaintiff's personality. It does not constitute an admission that the "medical assessment" was based on MMPI patterns and tendencies to the exclusion of the objective findings revealed by the Mental Status Exam. The evidence in the record does not support the ALJ's contrary finding, and remand is also necessary for a proper evaluation of both Dr. Ohlde's Mental Status Exam and his "medical assessment."

Because the case must be remanded for proper evaluation of Dr. Ohlde's report, for proper assessment of the medical opinions and plaintiff's RFC in accordance with the regulations and case law, and for proper explanation how the ambiguities were resolved and how the evidence supports the RFC findings, it would be premature at this time to attempt to

(wrapped below)

determine whether a finding that plaintiff is capable of low stress jobs is supported by Dr. Ohlde's findings and opinions regarding plaintiff's ability to deal with work stresses. Therefore, the court will not address this issue.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision be REVERSED, and that judgment be entered REMANDING the case pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

Copies of this recommendation and report shall be delivered to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), and D. Kan. Rule 72.1.4, the parties may serve and file written objections to this recommendation within ten days after being served with a copy.  Failure to timely file objections with the court will be deemed a waiver of appellate review.  <u>Hill v. SmithKline Beecham Corp.</u>, 393 F.3d 1111, 1114 (10th Cir. 2004).

Dated this 31st day of July 2006, at Wichita, Kansas.

s/John Thomas Reid
**JOHN THOMAS REID**
**United States Magistrate Judge**

-20-